**RECORD NO. 19-4167**

# IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

WILLIAM TODD COONTZ,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE

**OPENING BRIEF OF APPELLANT
WILLIAM TODD COONTZ**

David G. Barger
GREENBERG TRAURIG, LLP
Suite 1000
1750 Tysons Boulevard
McLean, VA 22102
703-749-1307
bargerd@gtlaw.com

*Counsel for Defendant - Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ....................................................... 1

ISSUES ............................................................................................ 2

STATEMENT OF THE CASE ............................................................... 3

SUMMARY OF ARGUMENT ............................................................... 7

ARGUMENT .................................................................................... 10

  1. The District Court Improperly Admitted Testimony from the Government's Witness about the Defendant's Alleged Understanding of the Tax Laws, and Testimony about Why the Return Preparer Stopped Preparing the Defendant's Returns ................................... 10

    Standard of Review ...................................................................... 10

    A. The District Court Improperly Admitted Testimony About the Defendant's Alleged Understanding of The Tax Laws ..................... 11

    B. The District Court Improperly Admitted Testimony from the Former Return Preparer on Why He Quit Preparing Returns for Coontz .................................................................................... 13

  2. The District Court Improperly Excluded The Defendant's Expert CPA From Providing testimony That Would Have Contradicted And Rebutted Arnold's Testimony ....................................................... 13

    Standard of Review ...................................................................... 13

  3. It Was Reversible Error For the Government to Submit To The Jury That Defendant's Tax Returns Were False By Overstating Business Expenses When The Government Did Not Introduce Any Evidence The Expenses Were Personal And Not Business ............................ 21

    Standard of Review ...................................................................... 21

4. The District Court's Decision To Sentence Above The Guidelines Range By Approximately 46- 17% Without Any Prior Notice Was Error And Requires Remand ..........................................................27

Standard of Review.............................................................27

CONCLUSION .........................................................................30

ORAL ARGUMENT ...................................................................31

CERTIFICATE OF COMPLIANCE...........................................32

CERTIFICATE OF SERVICE ....................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cheek v. United States*,
  498 U.S. 192, 111 S. Ct. 604 (1991)..............................................5, 12

*Irizarry v. United States*,
  553 U.S. 708 (2008)..........................................................29

*Tuggle v. Netherland*,
  79 F.3d 1386 (4th Cir. 1996) ...................................................10, 14

*United States v. Barnette*,
  211 F.3d 803 (4th Cir. 2000) ..................................................10, 14

*United States* v. *Certified Env.Serv., Inc.*,
  753 F.3d 72 (2d Cir. 2014) ....................................................21

*United States v. Cheek*,
  94 F.3d 136 (4th Cir. 1996) ...................................................21

*United States v. Cobler*,
  748 F.3d 570 (4th Cir. 2014) ..................................................27

*United States v. Hall*,
  551 F.3d 257 (4th Cir. 2004) ..................................................27

*United States v. Head*,
  641 F.2d 174 (1981)...........................................................27

*United States v. Jefferson*,
  674 F.3d 332 (4th Cir. 2012) ..................................................21

*United States v. Lankford*,
  955 F.2d 1545 (11th Cir. 1992) ................................................18, 20

*United States v. Medford*,
  661 F. 3d 746 (4th Cir. 2011) .................................................11

*United States v. Monus*,
  128 F.3d 376 (6th Cir. 1997) ..................................................20

*United States v. Pendergrass*,
   2006 U.S. Dist. LEXIS 79212 ....................................................23

*United States v. White*,
   3:18-cr-64, WDNC, Charlotte Div., Dkt. No. 28 ................................30

*United States v. White*,
   3:18-cr-64, WDNC, Charlotte Div., Dkt. No. 30 ................................30

*Yates v. United States*,
   354 U.S. 298 (1957)....................................................................26

**Statutes**

18 U.S.C. § 3231 ............................................................................1

18 U.S.C. § 4106 ............................................................................1

26 U.S.C. § 7203 ............................................................................4

26 U.S.C. § 7206(2) ........................................................................4

**Other Authorities**

Fed. R. Evid. 401 ...........................................................................21

Federal Rule of Criminal Procedure Rule 32 (h)................................29, 30

Federal Rules of Criminal Procedure Rule 52 (b) .............................22, 26

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this case by virtue of 18 U.S.C. § 3231.

This Court has jurisdiction over the appeal under 18 U.S.C. § 4106. William Todd

Coontz (Mr. Coontz, or Coontz) was found guilty on April 5, 2018 of certain tax

charges. Joint Appendix (JA) 7. He was sentenced on January 29, 2018. JA 9.

Judgment was entered on February 26, 2019. JA 9. The notice of appeal was timely

filed on March 11, 2019. JA 10 (Dkt. No. 69).

On March 28, 2019, Mr. Coontz filed in this Court a motion for release

pending appeal. Fourth Circuit (FC) Dkt. No. 8. On March 28,2019, this Court

ordered the government to file a response. FC Dkt. No. 9. On April 2, 2019, this

Court granted Appellant Coontz's motion for bond pending appeal. FC Dkt. No. 11.[1]

---

[1] The Order of the Court was entered at approximately 11:30 a.m. The BOP required Coontz to surrender at the designated facility, FCC Estill, S.C. by 12:00 p.m. A copy of the Court's Order was emailed to the BOP FCC before 12:00 p.m. but the BOP advised that it would have to confirm the authenticity of the Order. The BOP was encouraged to log onto PACER and download a copy of the Order. Initially, the BOP rejected the validity of the Order, contending it was not signed by a judge, but rather the Clerk of Court. Counsel for Mr. Coontz advised him to nevertheless surrender to the BOP, which he timely did. At the request of Appellant's counsel, the Fourth Circuit case manager assigned to this case advised BOP of the validity and genuineness of the Order. At approximately 4:00 p.m. BOP advised the case manager that Coontz would be released that day. Ultimately, Mr. Coontz was released at approximately 12:00 p.m. the next day, on April 3, 2019 after having been fully processed by BOP.

## ISSUES

1.      Was it reversible error for the government to elicit, over defense objection, from the government witness tax-return preparer, the preparer's opinion that the Defendant had a better than average understanding of the tax rules and regulations, and testimony from the preparer about his motives in resigning, which the government used as key evidence of willfulness?

2.      Was it reversible error to exclude the entire testimony of Appellant Coontz's expert witness – a CPA- who would have testified in rebuttal to the government's key witness – a tax return preparer- and who would have provided substantial evidence in support of the Defendant's main defense – a lack of willfulness.

3.      Was it reversible error for the government to argue to the jury that Mr. Coontz should be found guilty by reason of false business expense deductions when the government did not introduce evidence that any of the claimed expenses were not business expenses?

4.      Was it reversible error for the district court to increase the sentence by 46%- 17% over the advisory United States Sentencing Guidelines (Guidelines) without any prior notice?

## STATEMENT OF THE CASE

Mr. Coontz, is an Evangelical Christian ordained minister. He has a ministry through television, other media, and in the community where he now resides in Fort Lauderdale, Florida. He is also often a guest preacher at various churches and televised ministries for which he receives honoraria.[2] He operates his ministry through Rockwealth Ministries. He also operates a for profit business, Legacy Media, that sells various merchandise related to his ministry.

Both the government and the district court made it clear that they hold disdain for and disapprove of the ministry, Mr. Coontz's life-style and the ministry's fund-raising aspects. The district court observed at the sentencing hearing, without evidence, that he raised donations fraudulently from poor people because he did tell them about his lifestyle or that he was not allegedly paying all of his taxes. JA 807-08.

The government in requesting a sentence at the high end of the Guidelines range, noted that the Defendant was being sentenced in the same courtroom as TV evangelists Jim Baker and Bishop Ginwright and that the government took "fraud by ministers very seriously…" JA 812.

---

[2] JA 169-170.

Having not provided any evidence or allegations about, nor charged any wrongdoing with the regard to the ministry fundraising, the government pursued a criminal tax case against Mr. Coontz.

Mr. Coontz was charged with three counts of failing to timely pay all of his income taxes for the years 2011-2013, in violation of 26 U.S.C. § 7203, and four counts of assisting in filing his false tax returns, for the calendar years 2010-2013, in violation of 26 U.S.C. § 7206(2). JA 7, 12.

A jury convicted him on the charges on April 5, 2018 after a three-day trial. JA 12, 68. The government called nine witnesses, the defense, two. JA 146, 440. On the false return counts, the government alleged that Mr. Coontz underreported income by not reporting all of the income he received and by not reporting income from alleged personal expenditures made from his company. JA 12-22.

For the years 2010-2014, Mr. Coontz paid personal income taxes of approximately $866,505 and approximately $249,558.00 for the years 2015-2018. JA 8; Dkt. No. 53 at 10, FN 1.  In addition, as part of his ministry, Mr. Coontz caused his church to donate to Hunger for Humanity, approximately $1.5 million dollars between 2008-2018 to feed the poor and hungry.  JA 8; Dkt. No. 53 at 9; Dkt. No. 53-4.

The district court found the Sentencing Guidelines range to be 41-51 months. JA 804. The Defendant contended the range was two levels (33-41) to six levels

lower (21-27). JA 789-90, 795, 800. The government recommended the high end of the 41-51month range. JA 813. The court, with no prior notice of an intent to sentence above the Guidelines range, sentenced Mr. Coontz to 60 months incarceration. JA 817-818.

The main issue in the case, as is often the situation in tax cases, was whether Mr. Coontz's conduct was willful. Willfulness in all criminal tax cases is defined as the "voluntary intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 111 S. Ct. 604, 609–11 (1991). Thus, for the Defendant, evidence of lack of willfulness was critical to his defense. Knowing that, the government moved in limine at the beginning of the case to exclude Mr. Coontz's CPA expert witness.

The district court took the motion in limine under advisement cautioning the defense before any evidence was presented by either party that there needed to be a foundation for a good faith defense and the defense should not elicit testimony that is more appropriate coming from the court. JA 139-140.

Mr. Coontz appeals, among other things, the exclusion of his expert witness, a CPA who would have testified in rebuttal to the government's key witness tax return preparer. The Appellant's expert would have provided evidence in support of the Defendant's main defense—a lack of willfulness.

The appeal also involves the admission of testimony the government elicited, over defense objection, from that preparer, about the preparer's opinion that the

Defendant had a substantial understanding of the tax laws, again key evidence the government used to try to show willfulness.

After the government rested in its case in chief, the government sought to exclude the CPA, arguing that the anticipated testimony was not relevant and seemed to be about reliance and rules about what a good return preparer would know. JA 617, 620.

The government's effort to exclude the Defendant's key witness cannot be reconciled with the government's position in its case in chief, where it elicited testimony from Mr. Coontz's former return preparer, that covered areas about which the Defendant's CPA planned to testify. JA 199-275. In addition, the government elicited similar testimony from its last witness, an IRS Revenue Agent, about one of the same topics. JA 610-11.

The district court after just having heard from that IRS agent, excluded Defendant's CPA stating that the court in the best position to instruct the jury on the law related to Mr. Coontz's taxpayer obligations, that the testimony was not relevant and would be confusing to the jury, JA 621-22, even though the government solicited and the court permitted this type of testimony from the government's witnesses. JA 199-275, 610-11.

The Defendant's CPA was expected to testify about the permissibility of reporting income as the sole owner of an S-corporation, as well as testimony about

expensing various items such as clothing, automobiles, meals and entertainment.  JA 618-621.

The district court thus compounded the impact by excluding ALL of the CPA's anticipated testimony, which testimony had bearing on the correctness of certain business deductions and willfulness—disputed issues that were central to this case.

## SUMMARY OF ARGUMENT

Each of the district court's rulings in admitting or excluding the evidence discussed in this appeal was prejudicial and not harmless, and both individually and cumulatively raise substantial questions likely to result in a remand and a new trial. The excluded defense expert testimony was especially critical to rebut the testimony of key government witnesses, and was not offered for reliance on the expert, but to impeach the government's witnesses and rebut potential evidence of willfulness.  JA 621.

**1**.    The court improperly admitted testimony from the government's second witness, Mr. Coontz's former return preparer, about the preparer's opinion that Coontz had a better than average understanding of the tax rules and regulations. No foundation was laid for this opinion.  No context was provided about what tax laws Mr. Coontz might purportedly understand from the thousands that exist.

The court improperly admitted testimony from that same preparer that he wrote Mr. Coontz a termination letter to protect the preparer since he did not believe Coontz was following his advice about drawing a salary instead of taking a distribution from his Subchapter corporation. The preparer's belief about needing to protect himself was irrelevant and served only to prejudice Mr. Coontz.

**2.**      The court permitted that preparer, and the government's last witness, an IRS Revenue Agent assigned to the case, to testify about a number of tax and income and expense reporting concepts, such as taking a salary or distribution from a subchapter S-corporation one owns, taking deductions for meals and entertainment, vehicles, and other items.

The court then, at the government's urging, contradictorily excluded the same type of testimony from the Defendant's key witness, and expert CPA. This witness would have testified about the exact same topics about which the court permitted the government witnesses to testify.

The exclusion of the defense's key witness deprived the defendant of key testimony, and a key credible witness to rebut the government's witnesses on the key issue in the case, willfulness. Thus, the case must be remanded for a new trial.

**3**.      A significant part of the government's case was that Mr. Coontz had his company pay personal expenses, as opposed to business expenses, and did not pick up these expenditures as income. The government charged this in the

indictment, alleged it in opening statement, asked its witnesses about these expenditures, showed the amounts, and argued the theory at closing, and submitted the case to the jury based in part on these alleged personal expenditures. They considered it a sexy part of their case.

The problem for the government was that they did not actually prove the nature of the expenditures. They provided evidence of the amounts, they showed the source of the purchase, but they did not put in evidence that the expenditure's primary purpose was personal.

Stated another way, as the government witnesses testified, an expense, to be deductible by the business must have as its primary purpose, business, and it also must be ordinary and necessary. But the government then did not take the next step to actually prove that the expenditure was NOT business related. The lead government prosecutor was an experienced tax prosecutor. The IRS criminal and civil agents assigned to the case were experienced agents. They knew the law and they knew their burden. And, although they did not prove these items, they allowed them to go to the jury, and argued to the jury the Defendant had understated his income by not picking up these items as income. The jury thus was permitted to convict solely on the basis of these alleged personal items despite the lack of evidence. The jury was not asked to fill out a special verdict form, so there is no

way of knowing if the jury simply convicted based on this personal expense theory. Thus, the case must be remanded for a new trial on those counts, Counts 4-7.

**4.**     Last, the court without any notice, literally until the moment of announcing the sentence, departed or varied upward to a sentence of 60 months, from the advisory United States Sentencing Guidelines (Guidelines) range of 41-51 months. This represented a departure/ variance of between 46-17 % of that range. The court should have been required to provide advance notice of an intent to vary the sentence by such a substantial amount and the case should be remanded for resentencing.

## ARGUMENT

**1.     THE DISTRICT COURT IMPROPERLY ADMITTED TESTIMONY FROM THE GOVERNMENT'S WITNESS ABOUT THE DEFENDANT'S ALLEGED UNDERSTANDING OF THE TAX LAWS, AND TESTIMONY ABOUT WHY THE RETURN PREPARER STOPPED PREPARING THE DEFENDANT'S RETURNS**

### Standard of Review

The court's admission or exclusion of evidence over objection is reviewed for an abuse of discretion and whether the admission or exclusion of the evidence was harmless. The standard for harmless error is whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Tuggle v. Netherland,* 79 F.3d 1386 (4th Cir. 1996); see also *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000) (holding that exclusion of expert's testimony in death

sentence hearing was not harmless error because the exclusion of such evidence had a substantial or injurious effect on the jury's decision to the sentence of death); *United States v. Medford*, 661 F. 3d 746 (4th Cir. 2011).

### A. The District Court Improperly Admitted Testimony About the Defendant's Alleged Understanding of The Tax Laws

The government's second witness in the case was Trent Arnold, Mr. Coontz's former tax return preparer for his personal returns and business returns.  JA 207. Arnold did not provide services related to the ministry. JA 207.  Lead counsel for the government, who was experienced counsel in criminal tax cases, asked Arnold, at the end of his direct testimony,

Q.  "Did you form an opinion as to his [Coontz] knowledge about taxes during that time period? [the period that he prepared returns]

Mr. Foster:  Objection; lack of foundation; irrelevant.

The Court:  Overruled.

Q.  What is your opinion?

A.  My opinion is that, in general he had better than average understanding of the tax rules and regulations." JA 257.

The record shows that government did not establish any foundation for the question.  Arnold offered little in the way of any testimony about what Mr. Coontz actually said to him in their dealings.  Indeed, the government, apparently knowing from its preparation of the witness pretrial, that Arnold had little if any recollection

11

of actual conversations, couched its questions in the form of would information have been sent to or received from the client, or would you have discussed a matter with the client, as opposed to eliciting or establishing what if anything Mr. Coontz **actually** did or **actually** said. (E.g. JA 212-214, 219, 220, 223, 234, 243, 242, 252).

Arnold's opinion about Mr. Coont'z general understanding of tax rules and regulations was without foundation, was irrelevant, and highly prejudicial. There was no attempt to tie the tens of thousands of pages of extremely complex tax code and regulations and rules to something even remotely relevant to the issues in the case. It would be one thing if Arnold could point to specific things Mr. Coontz said about the IRS, or the tax code, or even generally whether he thought he owed taxes, or could receive a distribution as opposed to a salary. But there was none of that; Arnold simply made the bald-faced assertion that Mr. Coontz had a better than average understanding of the tax rules and regulations. A subjective "good-faith misunderstanding of the law or a good-faith belief that one is not violating the law" can negate the statutory willfulness requirement of criminal tax offenses. *Cheek v. United States*, 498 U.S. 192, 111 S. Ct. at 609–11. Given the key issues on intent in this case, the effort to elicit and the testimony itself were both inappropriate and highly prejudicial.

**B. The District Court Improperly Admitted Testimony from the Former Return Preparer on Why He Quit Preparing Returns for Coontz**

The government introduced, over objection, the former return preparer's resignation letter and a handwritten note to Mr. Coontz documenting the preparer's advice that Coontz should take a salary reportable on a form W-2 as opposed to distributions from his Sub-Chapter S corporation. The government then solicited, over objection on relevance grounds, testimony from Arnold on why he resigned. Arnold was permitted to testify that he wrote the resignation and note to document his advice and protect himself. JA 201-11.

Arnold's opinion that he felt he needed to protect himself was irrelevant to Mr. Coontz's state of mind and was objectionable and prejudicial testimony, designed to suggest that because the preparer felt Coontz had done something wrong, Coontz must have believed or known he had intentionally violated the law.

The damage to Mr. Coontz in admitting this evidence was also cumulative as the government's key witness was twice allowed to introduce improper evidence on Mr. Coontz's mental state.

**2.     THE DISTRICT COURT IMPROPERLY EXCLUDED THE DEFENDANT'S EXPERT CPA FROM PROVIDING TESTIMONY THAT WOULD HAVE CONTRADICTED AND REBUTTED ARNOLD'S TESTIMONY**

**Standard of Review**

The court's exclusion of evidence over objection is reviewed for an abuse of discretion and whether the admission or exclusion of the evidence was harmless.

The standard for harmless error is whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Tuggle v. Netherland,* 79 F.3d 1386 (4th Cir. 1996); see also *United States v. Barnette*, 211 F.3d 803 (4th Cir. 2000) (holding that exclusion of expert's testimony in death sentence hearing was not harmless error because the exclusion of such evidence had a substantial or injurious effect on the jury's decision to the sentence of death).

### The Exclusion of Mr. Coontz's Witness Constituted an Abuse of Discretion and Was Not Harmless

The main issue in the case was whether Mr. Coontz was willful. Thus, evidence of Mr. Coontz's lack of willfulness was critical to his defense. Knowing that, the government moved in limine to exclude Mr. Coontz's CPA expert witness.

The district court took the motion in limine under advisement but cautioned the defense that it needed a foundation for a good faith defense and the defense should not elicit testimony that is more appropriate coming from the court. JA 139-40.

The government's second witness, Mr. Coontz's former return preparer (and a CPA) JA 199, Trent Arnold, testified among other things, that he advised Mr. Coontz that he should be paid by salary and have a Form W-2 instead of taking draws from his Sub-Chapter S Corporation. JA 211, 256. Arnold also testified about the nature of a sub-chapter S corporation and tax aspects of that kind of corporation. JA 228-29, 231-34. This testimony was related to distributions and payments Mr.

Coontz received from his companies that went into the government's income calculation.

Arnold also testified about various expense categories on Mr. Coontz's company returns and the tax law and rules for such categories. This included testimony about when automobile expenses are permissible, JA 237, testimony about meals and entertainment, JA 238, including the rules for meals and entertainment, JA 239, 245), and vehicle expenses including depreciation, JA 237, 239, 241.

After the government rested in its case in chief, the government sought to exclude the Defendant's CPA, arguing that the anticipated testimony was not relevant because it seemed to be about reliance and rules about what a good return preparer would know. JA 617, 620.

The government's effort to exclude the Defendant's key witness was especially inappropriate because in the government's case in chief, the government had elicited testimony from its second witness, Mr. Coontz's former return preparer that covered areas about which the Defendant's CPA planned to testify. JA 199-275, as well as related testimony from its last witness, IRS Revenue Agent Archie, about the requirements concerning deducting business expenses. JA 610-11.

The district court excluded Defendant's CPA stating that the court was in the best position to instruct the jury on the law related to Mr. Coontz's taxpayer obligations, that the testimony was not relevant and would be confusing to the jury.

JA 621-622.  Yet the government solicited and the court permitted this type of testimony from the government's witnesses.  JA 211-256, 610-11.

The defense proffered to the court that the proposed defense witness, Peter Bell, is a CPA and he would have testified, among other things, about the following:

1.    A sole owner of an S-corporation, which is Mr. Coontz's status, is not required to pay himself a salary and that it is acceptable to take distributions as long as they are reasonable and properly accounted for.  JA 618, 621.

2.    A sole owner of an S-corporation may pay personal expenses on the company credit card as long as it is properly accounted for.  JA 618.

3.    An S-corporation may purchase vehicles so long as the cost and use and expenses are properly accounted for.  JA 618, 621.

4.    The purchase of clothing could be deductible business expense.  JA 618.

5.    The meals and entertainment are deductible if for a business purpose. JA 618-19.

6.    A business purpose would also involve whether it is ordinary and necessary.  JA 619.[3]

---

[3] The government elicited this exact testimony from its summary IRS witness just moments before the court excluded the defense witness. JA 612. Q. [by the government] Are all business expenses subject to need to be ordinary and necessary in order to be taken? A. [by Teresa Archie, IRS Revenue Agent, SEP (Special Enforcement Program) Agent, CPA, 13 year employee (JA 596)] They are.

16

7.      A form 1099 is issued to contractors who receive more than $600 in compensation in a year and that even if the person does not turn in his form 1099 to his accountant, it would be sent to the IRS and not hidden from the IRS.  JA 619.

8.      It is not improper for a contractor who receives payment by check to simply cash the check.  JA 619.

9.      A person who prepares returns and is compensated for that is considered a tax return preparer by the IRS and return preparers have a duty to obtain reasonable assurances.  JA 619-20.

The government strenuously objected to the proffered testimony, arguing it was irrelevant, that it was argument, that it was a back-door effort at a reliance defense, for which there was no basis, and that it was not clear who was supposed to know these rules. JA 620.[4]  Interestingly, during this same discussion with the court, the government pointed out that there was no evidence of what attire was purchased or what the purposes of the meals were. JA 620.  This is a significant admission because the government charged, sought at trial to prove, and argued at sentencing that various attire, meals and entertainment, and automobile expenses were personal and should be included for criminal purposes.

---

[4] This was an interesting objection by the government since it had elicited from Arnold, his opinion that Mr. Coontz had a better than average understanding of the tax rules and regulations.  JA 257.

The court excluded all of Bell's proffered testimony, deciding that it would be confusing to the jury and was not relevant. JA 622.

Respectfully, the government's arguments to exclude the testimony, and the court's rationale to exclude the testimony of the defense's key witness were clearly wrong. The government's own witnesses were allowed to testify about most if not all of these very items. *See United States v. Lankford*, 955 F.2d 1545, 1551–52 (11th Cir. 1992) (holding that it is an abuse of discretion to exclude the otherwise admissible opinion of the Defendant's expert on whether the Defendant reasonably believed money was income, while allowing the opinion of the government's expert, the Defendant's tax preparer, on the same issue).

For example, for proffered item 1 (taking a distribution or a salary from a sub-S corporation that you own), the government's second witness, Trent Arnold, the CPA and former return preparer, was permitted to testify about his recommendation that Mr. Coontz draw a salary instead of taking a distribution, and Arnold's feeling that it was important to document it to protect himself. JA 211. The government also asked and the court permitted Arnold to testify about the concept of "reasonable compensation" and that "the IRS requires a shareholder to take wages from their company in the amount that would meet the requirement of reasonableness. Now there is no definition of reasonableness so there is no dollar amount. But I had this

discussion in prior years concerning the need to report wages on a W-2 form, but never had been done." JA 256.

The government's objection to, and the court's exclusion of defense expert Bell was especially damaging and prejudicial on this topic, and left Arnold's advice and worries (and inferences) unrebutted. Arnold was permitted to testify that Mr. Coontz had to report income on a W-2 and Coontz was not allowed to rebut that with his own witness. It was inexcusable to prohibit Bell from responding.

The government also asked Arnold, and the court permitted testimony about what a subchapter S corporate tax return is, how income and expense is reported, and how it flows through to a K-1 to the owner. JA 228-234. The court's justification to exclude Bell on the basis that the court instructs on the law, or that Bell's testimony would be confusing simply does not hold up when compared to what the government asked and court allowed.

For proffered item 3 (vehicles), Arnold was permitted to testify that automobiles can be a business expense only if they are actually used for business. JA 237. IRS Agent Archie testified that you have to see if the vehicle is a proper business expense and proper records are kept and look at mileage and depreciation. JA 610-11. Interestingly, Archie's testimony came minutes before the judge excluded Bell's testimony about the very same thing. JA 622.

For proffered items 3-6 (vehicles, clothing, meals, and ordinary and necessary business expenses) the government was allowed to ask IRS Agent Archie about, and she was allowed to testify about the requirement that all business expenses are "subject to the need to be ordinary and necessary."[5] JA 612.

*See United States v. Lankford*, 955 F.2d 1545, 1551–52 (11th Cir. 1992). Additionally, the Defendant's expert's proposed testimony was not in the nature of legal testimony that would or could usurp the court's function to instruct the jury on the law (though the court gave no instructions on any of these areas of reporting income or expenses). *See United States v. Monus,* 128 F.3d 376, 386 (6th Cir. 1997) (holding that expert opinions on whether certain money triggers tax liability does not usurp the function of the jury).

The government's objections to and the court's agreement to exclude the Defendant's key witness also deprived the defense of the most important vehicle or person through whom to convey the defense to the jury. As those who try cases know, it is one thing to cross-examine a hostile government agent who has worked the case, it is another to have a witness whom you have interviewed and prepared to call in your case.  The damage to the defense's case is often incalculable if the defense does not have a witness to present its theory and evidence to the jury.

---

[5] The government's testimony about what is necessary to constitute a business expense and what the government must prove, just highlights that the government knew what <u>it</u> must prove in a criminal case and that it did not do so.

20

Evidence "is relevant if it has any tendency to make a material fact more or less probable than it would be otherwise." *United States* v. *Certified Env.Serv., Inc.*, 753 F.3d 72, 90 (2d Cir. 2014). Moreover, "[e]vidence need not be conclusive in order to be relevant[;] [a]n incremental effect is sufficient." *Id.* (internal quotation marks, citation, and ellipsis omitted). Under this standard, the district court's evidentiary rulings, which dismissed as irrelevant crucial defense evidence on core disputed issues, constituted a clear abuse of discretion. *Cf. id.* (holding that the district court abused its discretion in excluding testimony that could bear on "the defendants' intent and good faith" because it "was a contested issue in this case, and the definition of relevance under Fed. R. Evid. 401 is very broad"). *A fortiori*, the district court's evidentiary rulings unquestionably prejudiced the Appellant.

**3.    IT WAS REVERSIBLE ERROR FOR THE GOVERNMENT TO SUBMIT TO THE JURY THAT DEFENDANT'S TAX RETURNS WERE FALSE BY OVERSTATING BUSINESS EXPENSES WHEN THE GOVERNMENT DID NOT INTRODUCE ANY EVIDENCE THE EXPENSES WERE PERSONAL AND NOT BUSINESS**

### Standard of Review

Questions of law are reviewed de novo. *United States v. Cheek*, 94 F.3d 136, 140 (4th Cir. 1996). Alternative theory errors, as alleged below, are subject to ordinary harmlessness review, and the relevant appellate inquiry is whether the error was harmless. *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012). A plain error that affects substantial rights may be considered even if was not specifically

brought to the court's attention at trial. Rule 52 (b), Federal Rules of Criminal Procedure.

## Argument

One of the government's major theories of prosecution was that Mr. Coontz overstated his expenses on company tax returns and did not pick up the expenditures as personal income. The government vigorously pursued this theory through the case. It was pled in the Indictment. JA 12, 16-19 (para.s 3,15 b, 16, 17, 19, 21, 22,23, 24).[6] They featured it in their opening statement. JA 156, 157. They put in evidence through Mr. Coontz's former bookkeeper that she kept a schedule showing the nature of the expenses and listing which ones were personal and which ones were business based on instructions from Mr. Coontz. JA 325-30, 343. They elicited testimony from the preparer and the government's IRS Revenue Agent/ Summary Witness/ Expert that expenditures to be deductible must have as their primary purpose, business and be ordinary and necessary. JA 610-11, 237.[7] The government even introduced lists of purported food and entertainment expenditures (which simply identified the name of the payee but not the actual nature of the expenditure).

---

[6] The government pled a number of items (improperly) that it did not attempt to prove. For example, para. 16 b. alleged that the ministry purchased a parsonage for Coontz. While the government may not like the IRS rules that allow for such, that dislike is not the test.

[7] Even though the government objected to and the district court excluded the Defendant's CPA from testifying about the same matters.

The government then pursued this same theory in closing argument that Mr. Coontz filed false personal returns by understating his income by not including these alleged personal expenditures. The government mentioned these alleged personal expenditures in their closing argument at least five times in three pages. JA 670, 673, 674, 675, 676, 676, 678, 679.

The government's enthusiasm for this theory lacked the most important ingredient- evidence. Despite having a lead prosecutor who previously worked at the DOJ Tax Division as a criminal tax prosecutor,[8] and thus presumably knew better, there was no testimony from any witness to show the specifics of a particular expenditure such as meals or entertainment to show it was personal, and that its primary purpose was not business. Absent testimony from a participant in the meal or entertainment about its purpose, or admissions, it is not possible to show the purpose was not business and was only personal.

For example, the government used the former return preparer, Arnold, to testify about how he prepared returns, and the kinds of information he would request from clients, but he did not provide any testimony about the purpose of any of the expenditures.

---

[8] *United States v. Pendergrass,* 2006 U.S. Dist. LEXIS 79212, U.S.D.C., MDTN, Oct. 2006.

23

The inadequacy of the government's trial evidence, was corroborated at sentencing when Mr. Coontz objected to the government's continued use of the expenditures as a tax loss item, which required the government to put on evidence to attempt to substantiate the loss. The IRS Revenue Agent who was the trial witness, admitted on cross-examination at sentencing that in a criminal case it was the government's burden to prove the expenditure was personal and not business. cite. She admitted there was no evidence of the actual purpose of the expenditure.

Q. And you certainly understand that in a criminal case the burden is on the government and the IRS to show the deduction, let's say – let's talk about deductions for a second – that the deduction was not appropriate, that it shouldn't have been taken for business purposes, correct?

A.    [By IRS revenue Agent Archie] Correct.

Q.    And separate and apart from whether the deduction is appropriate, you also have to look at whether the defendant had the sufficient intent to purposely take a false deduction, right?

A.    I understand. (JA 759)…

Q.    …in order for that expense [meals and entertainment] to be deductible the primary purpose of the meal and entertainment would have to be business related?

24

A.    Correct.

Q.    If we are in a criminal case, whose burden would it be to prove that the particular meal was not business related or in fact personal?

A.    It's the government's responsibility. (762)…

Q.    In the items that the various meals, for example, that you attributed to Mr. Coontz, Pastor Coontz, for criminal purposes, can you point to any other evidence the government gathered either in the investigation or at trial to show that these expenses had no business purpose whatsoever?

A.    They were subpoenaed and not provided.

Q.    All right. So your basis for saying they're criminal is that the business didn't have contemporaneous records or didn't produce them?

A.    That, and my experience as a revenue agent that the type of business would not ordinarily need these type of expenses – as a business. (JA 762).

Perhaps more significant than the admissions of the case agent at sentencing, are the admissions made by the government prosecutor at trial when the government sought to exclude the defense expert. After defense counsel made its proffer:

The Court: Thank you. What's your objection, if any?

[The government prosecutor]: I object to relevance of this. I don't know who was supposed to know this. it sounds like argument, but who was supposed to know these rules? The talk about the formal attire. **There's been no evidence of what was purchased. I don't believe those records exist, same with meals. There's no records of any of what those meals were or the purpose**. (JA 620) (emphasis added).

It was thus totally improper for the government to pursue at closing argument and to submit to the jury, the inadequate theory of understated income based on these alleged personal expenses. Since there was only one potential basis for the alleged false personal returns – understated income, and there was no special verdict form to differentiate the basis for the jury's verdict, there is simply no way to know if the jury convicted on the false return counts based on the alleged personal expenditures.[9] *See Yates v. United States*, 354 U.S. 298, 312 (1957) ("a verdict [is required] to be set aside in cases where the verdict is supportable on one ground, but not another,

---

[9] Mr. Coontz's trial counsel moved at the close of the government's evidence to dismiss the charges on sufficiency of evidence grounds. JA 614. The issue of lack of evidence on the purpose of the expenditures was discussed a few pages later. JA 617-621. Thus, arguably Coont'z trial counsel properly raised and preserved this issue of the alleged personal expenses. To the extent the government argues otherwise, Appellant respectfully submits the actions by the government and the error by the court rises to the level of clear error under Rule 52 (b), Federal Rules of Criminal Procedure.

and it is impossible to tell which ground the jury selected"); *United States v. Head*, 641 F.2d 174, 179 (1981).

Thus, those convictions must be vacated and remanded for a new trial, and since the government's evidence of alleged personal expenses was insufficient as a matter of law, the government does not get a second bite to attempt to prove those items.

### 4. THE DISTRICT COURT'S DECISION TO SENTENCE ABOVE THE GUIDELINES RANGE BY APPROXIMATELY 46- 17% WITHOUT ANY PRIOR NOTICE WAS ERROR AND REQUIRES REMAND

#### Standard of Review

Failure to comply with the Federal Rules of Criminal Procedure is reviewed *de novo*.

Alleged Constitutional violations are reviewed de novo. *United States v. Hall*, 551 F.3d 257, 266 (4th Cir. 2004) ("We review *de novo* a properly preserved constitutional claim"); *United States v. Cobler*, 748 F.3d 570, 574 (4th Cir. 2014) (holding that whether a sentence is disproportionate to the severity of defendant's crimes is a question that is reviewed *de novo*).

#### Argument

The district court found that the applicable Sentencing Guidelines calculation to be a level 22. With Mr. Coontz's prior criminal history of I (no prior convictions

at all), this resulted in a Guidelines Range of 41-51 months.[10]  The government, noting that Coontz was being sentenced in the same courtroom at Jim Baker and Bishop Ginwright, requested a sentence of 51 months.  The government's reference reinforced their motivations from the outset of this case, that they viewed Mr. Coontz's ministry with disdain and disapproval and saw it as a fraud. The government's view was indicative of the district court's motivation as reflected in its statement at sentencing.

To compound the seriousness and magnitude of the district court's unannounced departure, if one reads the Defendant's sentencing memoranda and the sentencing hearing transcript, it is clear that Defendant made compelling arguments that the tax loss was overstated, and that the Guidelines range should have been 33-41 months.  The district court, without explanation, rejected the defense arguments and adopted without change, the government's calculations.  The court departed/ varied to a sentence of 60 months.  This represents a 19 month increase from the low end of the Guidelines range (41 months), and is greater than a 46% increase from the number. A sentence of 60 months represents a 9 month increase from the 51 month range, which is a greater than 17% departure/ variance/ increase.

---

[10] While the Appellant strongly disputes (for the reasons in our pleadings and arguments at sentencing) the Sentencing Guidelines findings on tax loss and obstruction found by the district court, he does not appeal this fact finding, which only requires a preponderance of the evidence and due deference standard.

Had the Guidelines been 33-41 months, as they should have been at worst, then the court's 60 month sentence would have represented an even greater increase (82% to 46%).

While the court couched the increased sentence as a variance and not a departure, the impact of such a significant departure was the same whatever label it is given. Needless to say, Mr. Coontz and defense counsel were stunned by the increase, and the amount and had not prepared an additional argument to deal with this surprise. The government had not sought a departure or variance.[11]

The district court's failure to give any notice of its intent – indeed, there was no mention that the court was entertaining such a possible sentence until it was announced. While a timely objection was made after the court announced the sentence, JA 821, there was still no opportunity to prepare a rebuttal or response, or make one since sentence had now been imposed.

Calling the increase a variance does not lessen the impact on Mr. Coontz's due process and sentencing rights under the 5th and 8th Amendments to the United States Constitution. Respectfully, Federal Rule of Criminal Procedure Rule 32 (h) requires prior notice of a possible departure and the same considerations should apply here. But see, *Irizarry v. United States*, 553 U.S. 708 (2008). (" The more

---

[11] The government did suggest a variance if the court agreed with defense counsel's arguments about the Guidelines calculations that would have reduced the Guidelines by two to four levels. JA 793.

appropriate response to such a problem is not to extend the reach of Rule 32(h)'s notice requirement categorically, but rather for a district judge to consider granting a continuance when a party has a legitimate basis for claiming that the surprise was prejudicial.").

This Court respectfully should remand for a new sentencing to allow Mr. Coontz to prepare for and address the anticipated departure.[12]

## **CONCLUSION**

Appellant respectfully requests that this Court reverse and remand the case for a new trial. The Appellant further requests, that in the event of a remand, given the fact that the government's evidence was insufficient concerning alleged personal expenditures, that the government be precluded from litigating that theory on remand.

If the Court does not reverse and remand the case for a new trial, then the Appellant requests that the case be remanded for a new sentencing hearing.

---

[12] By way of contrast, a defendant who was sentenced by the same judge immediately prior to Mr. Coontz's sentencing was convicted of being a felon in possession of a loaded stolen firearm. The Defendant was stopped at 5:00 a.m. in a car with multiple occupants. He was in possession of the loaded stolen firearm and wearing a bullet-proof vest. He had a criminal history of III and the court noted his prior crimes of violence, including assaults false bomb reports, and his convictions for selling narcotics. The Guidelines range was 37-46 months. The government recommended 44 months and the court imposed a sentence of 44 months. *United States v. White*, 3:18-cr-64, WDNC, Charlotte Div., Dkt. Nos. 28 (Judgment) and 30 (sentencing transcript, ordered by Appellant in this case, at 1-16).

In the event of a remand on either ground, the Appellant respectfully requests

that the case be remanded to a different judge.

## <u>ORAL ARGUMENT</u>

Oral Argument is requested.

Respectfully submitted,


_____/s/_____
David G. Barger
Greenberg Traurig, LLP
1750 Tysons Blvd., Suite 1000
McLean, VA 22102
Tel: (703) 749-1300
Fax: (703) 749-1301


*Counsel for Appellant*

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. § 28.1(e)(2) because it contains a total of <u>7,075</u> words.  This brief complies with the typeface using requirements of Fed. R. App. P. § 32(a)(5) and the type style requirements of Fed. R. App. P. § 32(a) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14.

/s/

David G. Barger

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I, counsel for defendant-appellant William Todd Coontz and a member of the Bar of this Court, certify that, on, a copy of the attached Appellant's Opening Brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court.  I further certify that all parties required to be served have been served.


Date:  June 3, 2019                          _____/s/_____
                                              David G. Barger

                                              *Counsel for Appellant*